# CASES

# SUPREME JUDICIAL COURT

# KENNEBEC.

## *MAY TERM*

## 1826.

---

### THE INHABITANTS OF PITTSTON *vs.* THE INHABITANTS OF WISCASSET.

Where an alien who had married a woman of this State, subsequently abandoned the country, without any intention of returning ; leaving his wife and infant son here ; but afterwards sent for them, and continued for 17 years to express affection for his son, and a strong desire to have him come and reside with him ;—it was held that the son was not emancipated by such abandonment ; and so was not capable of acquiring or receiving a settlement in his own right, while a minor.

A marriage unlawful and void, as where the first husband was still living, conveys no settlement to the wife; either by derivation from the second husband, or by dwelling and having her home in his house, at the time of passing the *Stat.* 1821, *ch.* 122.

THIS was an action of *assumpsit* for the support of one *James Shea* a pauper, of the age of 18 years. In a case stated by the parties, it was agreed that the pauper's father was an alien, resident in the British province of New Brunswick ; that in 1806 he was married to the pauper's mother, then a minor, who had a settlement in *Wiscasset*, derived from her father ;—that he lived with his wife about fourteen months, during which time the pau-

per was born ; after which he left her, and went to New Bruns-
wick, saying he never intended to return to this country. At the
time of the marriage, the pauper's mother resided with her
father in the plantation of *Ballston*, which was incorporated into
a town by the name *Whitefield* in 1809, she being still resident
there, with her father.  In 1811 the pauper's mother was again
married to one *Hutchinson*, whose settlement was in *Whitefield*,
and with whom she has ever since dwelt as his wife.  The pau-
per, since the second marriage of his mother, had resided in
*Whitefield* with his grandfather till 1817, and afterwards in other
families, in that and the neighboring towns; *Hutchinson*, who was
a poor man, being unwilling to support him ; but his mother di-
recting the course of his life, and in one instance making the con-
tract for his services, and receiving part of his wages.

The pauper's father left no property in this country, and con-
tributed nothing for his support ;—but about about a year or two
after he left *Whitefield* he sent for his wife, and she proposed to
go to him, and went on board a vessel for that purpose, but after-
wards relinquished the undertaking.  He continued to make in-
quiries for his wife and son ; and about seven years ago offered ten
pounds to a person to bring him to New Brunswick ; and recent-
ly had written him a letter, requesting him to come to him, prom-
ising him his estate, and expressing much kindness and affection.

At the time of the passage of the statute of *March* 21, 1821,
the pauper resided in *Pittston* at service, in a family in which he
dwelt upwards of three years.

*Sheppard*, for the defendant, upon these facts, contended—1st,
that the pauper was emancipated by misfortune ; his mother, by
her second  marriage, having deprived herself of the power of
protecting him, and excluded him from a right to share her home;
and his father, an alien, having abandoned the country, without
any intention of returning.  Being thus cast upon the world, he
was capable of an involuntary settlement, at least, and acquired
one in *Pittston*, by having his home in that town when the last set-
tlement act was passed.  *Freto v. Brown* 4 *Mass.* 675.  *Wiscas-
set v. Waldoborough* 3 *Greenl.* 388.  *Lubec v. Eastport* 3 *Greenl.*
280.

2. If he acquired no settlement in *Pittston* in his own right, he gained one in *Whitefield* in right of his mother, she being resident there at the time that town was incorporated, and also at the time of passing the settlement act. She was capable of acquiring a settlement for herself, being deserted by her husband, and he being an alien, and never intending to return. As far as she was concerned, he was as if dead, being in the situation of one who has abjured the realm ; in which case it is well settled that the wife may act and be treated as a feme sole. *Gregory v. Paul* 15 *Mass.* 31, and authorities there cited.

3. If the father had not abjured this country, then his domicil remained in *Whitefield*, and his settlement was fixed there by the law of 1821, which operates on aliens as well as citizens. *Knox v. Waldoborough* 3 *Greenl.* 455. In this case the pauper's settlement is in *Whitefield*, derived from his father.

*Allen*, for the plaintiffs.

MELLEN C. J. delivered the opinion of the court at the ensuing *June* term in *Somerset*, as follows.

*James Shea*, the pauper, is the son of *Joanna Shea* the wife of *John Shea*, an alien and British subject. *Joanna* was born at *Wiscasset*; and her father *John Kincade*, at the time of her birth, had his legal settlement in that town ; and though he afterwards gained another settlement in *Whitefield*, in virtue of its incorporation as a town in the year 1809, yet his daughter *Joanna* did not, though then under age, because in 1806 she was lawfully married to the said *John Shea*. The question, therefore, is whether the pauper has lost his original settlement in *Wiscasset*, and gained another, either in right of his mother, or in his own right. It is contended that in about fourteen months after their marriage, she was abandoned by her husband who then went to New Brunswick, where he has ever since resided ; but it appears he had no idea of abandoning her, because he several times inquired after her and his son, and was anxious for them to follow him to his new abode, where he preferred to reside ; and that she was once on the point of going to him, but was disappointed. Her

marriage with *Hutchinson*, when known to the husband, of course put an end to his solicitations for her removal to New Brunswick. We do not therefore perceive how the pauper's mother could gain a settlement in *Whitefield* in her own right, in virtue of its incorporation, she then being the lawful wife of *John Shea* ; and she could not gain one under her husband *Shea*, because he was not an inhabitant of that town on the 21st of *March* 1821. In this respect this differs from the case of *Knox v. Waldoborough* *3 Greenl.* 455 ; and as the marriage with *Hutchinson* was unlawful and void, of course she gained no settlement thereby in *Whitefield*. Thus it seems the pauper never acquired a settlement in any other town than *Wiscasset*, in right of his mother or of his father. The remaining inquiry is whether he ever gained one in his own right. He is still a minor, and unless he has been emancipated, he could not gain one. Since the year 1817 he has resided in different places by permission or direction of his mother ; she has received a proportion of his wages, and in one or more instances made the contract as to his service. In addition to this it appears that his father has made several exertions to procure the removal of his son to New Brunswick, and urged his removal, assuring him of his aid and assistance, and of his regard and affection, and also informing him that the father's estate should eventually become his. All these facts shew the existence of paternal claims upon his son, and a right to enforce those claims at pleasure; at any rate, they put a negative upon the idea of emancipation. This is never to be presumed, but must always be proved. As the facts before us do not prove an emancipation, the original settlement of the pauper in *Wiscasset* remains ; and therefore a default must be entered.